## STATE vs. MATTHEW WARD.

49 429
a72 640

A grand juror's complaint, upon which a person accused of crime is bound over to the Superior Court, in which court a new information is filed by the state's attorney, is a part of the whole proceeding and prevents the running of the statute of limitations against the offence.

The defendant pleaded in writing, not guilty, and a further plea that the prosecution was barred by the statute of limitations. Held that he could not plead both pleas.

The court below having refused to receive the pleas, and the defendant not offering to amend, the court ordered him to plead orally, guilty or not guilty. Held to be no error.

Under the plea of not guilty the defendant was allowed to prove the same matter that he had set up in his plea in bar. Held that if the court had erred in refusing to receive his plea in bar he had not been injured by the ruling.

Under the statute (Gen. Statutes, p. 503, sec. 15,) which provides that the receiver of stolen goods shall be "proceeded against as a principal" and punished in the same manner, the information may charge merely the theft.

And where, under an information charging the theft, the state's attorney had offered evidence that the defendant was the principal in the theft, it was held that he was not precluded from offering further evidence that he received the stolen goods.

A receiver of stolen goods can be prosecuted in the county where the goods were stolen, although he received them in another county.

The courts of the latter county would also have jurisdiction.

To prove guilty knowledge on the part of the receiver, it may be proved that he had before received stolen goods from the same person from whom he received the goods in question.

It is not necessary that the goods before received should have been stolen from the same person, nor be of the same character.

A party has no right to offer evidence in support of the character of a witness for veracity or integrity where it has not been impeached, simply because he has been contradicted.

A witness was asked whether he did not live with a woman who kept a house of ill-fame. The court, against objection, admitted the question, informing the witness that he could answer it or not as he chose. Held to be no error.

Evidence offered before a jury and ruled out, can not be regarded as having done the party objecting any harm.

A horse comes within the term "goods or articles," in the statute (Gen. Statutes, p. 503, sec. 15,) with regard to the receiving of stolen goods.

*Concealing*, under the statute, includes all acts which tend to render the discovery of the property difficult, such as attempting to destroy the means of its identification.

INFORMATION for stealing a horse; filed in the Superior Court in New Haven County, at the January term, 1879.

The information charged that the defendant, "at the town of Southbury in New Haven County, on the 7th day of September, A. D. 1878, with force and arms, one certain bay mare belonging to and the property of David J. Stiles of said Southbury, and of the value of three hundred dollars, then and there being found, feloniously did steal, take and drive away, against the peace, and contrary to the statute in such case made and provided." The information contained but a single count.

The defendant had been bound over to the Superior Court by a justice of the peace, upon a grandjuror's complaint, charging the same offence, dated the 5th day of October, 1878.

At the October term of the court, 1879, before *Culver*, *J.*, a jury was impaneled in the case, and the defendant was called upon for the first time to plead to the information. He then offered the following pleas in writing:—

"To said information the defendant here in court pleads and says that he is not guilty as charged in said information. And for a further plea in this behalf the defendant says that he ought not to be further prosecuted in this case on said information, because he says that said supposed offence in said information mentioned was committed, if ever, more than three years before the time when the defendant was required to plead or make answer to said information. And this he is ready to verify. Wherefore he prays judgment whether he ought to make further or other answer to said information."

The State's Attorney objected to these pleas and claimed that the defendant could not plead not guilty and also the special plea at the same time. The court sustained the objection and ordered the defendant to plead orally to the information and say whether he was guilty or not guilty. Thereupon, without waiving his right to plead as aforesaid, and insisting thereon, but by order of the court, he pleaded not guilty.

The State's Attorney offered evidence tending to prove, and claimed the right to prove, that the defendant stole the horse at Southbury, on the 7th of September, 1878. To this evidence the defendant objected upon the ground that more than three years had elapsed since that date, and claimed that the defendant never having been called upon to plead to the information until now the prosecution was barred by the statute of limitations, but the court overruled the objection and held that the prosecution before the justice of the peace and binding over of the defendant was sufficient to prevent the statute of limitations from running against the offence.

The State's Attorney having claimed and offered evidence to prove that the horse was actually stolen at Southbury, on the 7th of September, 1878, by one George Gilbert, and by the procurement and direction of the defendant, thereupon also further claimed that if the defendant was not chargeable with the act of theft, he yet afterwards, on the 8th of September, 1878, at Huntington in Fairfield County, received the horse from Gilbert, and concealed it, knowing that it had been stolen by him.

To this evidence the defendant objected upon the grounds—1st, that upon this information, charging in a single count that the defendant stole the horse at Southbury in New Haven County, the State's Attorney could not offer evidence of his receiving and concealing it (knowing it had been stolen) at Huntington in Fairfield County; 2d, that he could not be tried on this information for the distinct and separate offence of criminally receiving the horse at a different time and place from that specified in the information, and without being therein charged with the last named offence. But the court overruled the objection and admitted the evidence.

The State's Attorney claimed and offered evidence to prove, for the purpose of showing that the defendant with guilty knowledge received the horse at Huntington, that in the May next previous to the stealing of the horse, Arthur Gilbert, a brother of George Gilbert, who stole the horse,

and J. Terrill, of Roxbury in Litchfield County, broke open
the smoke house of William Welton, in Bridgewater in that
county, and took therefrom five hams, and after concealing
them over night, on the following day, in company with
George Gilbert, carried them to the defendant's house in
Huntington, and sold them to him, and at the same time
communicated to him all the circumstances of the stealing
of them, and that the proceeds of the sale were then and
there divided with Terrill.  The defendant objected to
this evidence on the ground that it was irrelevant, but the
court overruled the objection and received it for the purpose
for which it was offered.

The defendant, for the purpose of disproving the testi-
mony of Arthur Gilbert as to the stealing and disposition
of the hams, offered the said Terrill, who was then and for
many years previous thereto had been and now was a resi-
dent of the town of Roxbury, and who had also resided
some time in New Haven, as a witness, who testified that
he had no connection with the stealing of the hams and had
no knowledge that they were stolen, but that at the time
they were taken to the defendant's he was informed by
Arthur Gilbert that they had been sent by his father for
him to sell at Birmingham, that they arrived there too late
in the evening to sell them there, and that he took them to
the defendant's house on his way to the sea-side; and that
he did not tell the defendant that the hams had been stolen,
but informed him that his father had sent them by him to
sell at Birmingham, that he arrived there too late, and
desired the defendant to purchase them, and that the
defendant did purchase them.

After Terrill had testified, the defendant offered to prove
by a number of respectable witnesses who resided in
Roxbury and the immediate neighborhood of Terrill, and
who had for many years known him and were well acquain-
ted with his reputation for veracity and honesty, that he
was a man of strict integrity, and had always borne a good
reputation for veracity; and claimed that, inasmuch as the
truth and integrity of Terrill had been drawn in question

State *v.* Ward.

and in a measure impeached by Arthur Gilbert, it was proper to sustain his character for honesty and reputation for truth. To this evidence the State's Attorney objected, on the ground that he was a resident of this state and lived in Roxbury next adjoining Southbury where the theft was committed, and had also lived some time in New Haven, and that no witnesses had been called to impeach his general character for integrity and truth. The court sustained the objection and held that the defendant could not support the general character of Terrill for truth and honesty, until it had been in some other way impeached.

One William H. Collins was called by the defendant and testified in his behalf, and having upon the examination in chief testified that he lived in Wallingford, and worked on his farm there, upon cross-examination was asked if he did not live with a woman who kept a house of ill-fame. The defendant objected to this question as irrelevant, but the court ruled that it might be put, but that the witness need not answer it unless he chose to do so; and thereupon the witness declined to answer the question.

The State's Attorney also, in the presence and hearing of the jury, offered to produce in evidence pending informations against one Johnson, a witness for the defendant, and said Collins, charging them with theft, and claiming that he had a right to introduce the same in evidence for the purpose of impeaching their character and credibility. The defendant objected, and insisted that the Attorney had no right to produce such informations in the presence of the jury or to state the substance of their contents, and that they were inadmissible for any purpose. The court excluded the evidence.

The defendant requested the court to charge the jury that under this information, containing only one count, charging that the defendant at Southbury in New Haven County stole the horse in question, the defendant could not be tried for receiving and concealing it (knowing it to have been stolen) at Huntington in Fairfield County; and that two separate, independent and distinct acts, involving dis-

tinct and different evidence, require at least two separate counts, even if, under two counts for *stealing*, the evidence of receiving and concealing could be received under one of the counts. But the court did not so instruct the jury, but charged them that under this information the State might prove, and they might find if satisfied by the evidence beyond a reasonable doubt, that the defendant personally stole the horse on the 7th day of September, 1878, or that he procured George Gilbert to steal it, or that, if they did not so find, they would have a right to find that he received it at Huntington, in Fairfield County, on the 8th day of September, 1878, knowing it to have been stolen.

The defendant further requested the court to charge the jury that the Attorney for the State should be compelled to elect, before submitting the case to the jury, upon which charge he claimed a conviction, and not leave the jury to find whether he was guilty of one of two separate statutory offences. But the court did not so instruct the jury.

The defendant further requested the court to charge that neither at common law nor under the constitution and laws of this state, could the defendant be tried for receiving and concealing a stolen horse under this information. But the court did not so charge, but that the defendant could be so tried.

The defendant also requested the court to charge that the jurisdiction of this court could not, under the common law or under the constitution and laws of this state, extend to the trial of the question whether the defendant was guilty of receiving and concealing this horse in Fairfield County. But the court did not so charge the jury, but charged them that the defendant could be tried upon the information in this court, and that it was proper to show that he received and concealed the horse in Fairfield County, knowing the same to be stolen in New Haven County.

The defendant also requested the court to charge that the receiving must be followed by concealing; and that the concealing must be actual. Upon this point the court charged the jury that there must be a concealing of the

horse; but that as the statute did not define what is meant by the term "concealing," the jury must find as a fact, from all the evidence and circumstances, whether the defendant concealed the horse as well as received it; that the court did not understand that concealing necessarily meant putting the horse in a cellar, or under ground, in a barn or in some secluded place in the woods; that the State claimed to have proved that the horse, after it was received by the defendant, was clipped, and otherwise changed for the purpose of making it more difficult to identify it; that he took no measures to inform the owner that it was in his possession, but suppressed that fact; and that if the jury found these facts proved it would be for them to say whether there was a concealment within the meaning of the law.

The defendant further requested the court to charge the jury that a horse was not included within the meaning of the terms "goods or articles," as used in the statute with regard to the receiving of stolen goods. But the court charged the jury that a horse was included within the meaning of these terms.

The jury returned a verdict of guilty, and the defendant moved for a new trial for error in the rulings and charge of the court.

*H. B. Munson* and *W. H. Williams*, in support of the motion.

*T. E. Doolittle*, State's Attorney, and *A. N. Wheeler*, contra.

PARK, C. J.   On the trial of this case in the court below the defendant offered the following pleas:—

"To the said information the defendant here in court pleads and says that he is not guilty as charged in said information.   And for a further plea in this behalf the defendant says that he ought not to be further prosecuted in this case on said information, because he says that the said supposed offence in said information mentioned was

committed, if ever, more than three years before the time when the defendant was required to plead or make answer to the said information. And this he is ready to verify."

The Attorney for the State objected to the receiving of these pleas, on the ground that it was double pleading, and on the further ground that, by the rules of pleading, the defendant could not plead in bar after pleading the general issue. The court ruled in accordance with this claim and rejected the pleas. Afterwards the defendant proved, under his oral plea of not guilty, all the facts stated in his plea in bar, and had the full benefit of them both in law and fact. He has, therefore, no ground for a new trial, even if the court was wrong in its ruling. But the ruling was strictly correct.

Chitty, in his Criminal Law, sec. 435, says:—" At common law there was but one rule, which applied alike to civil and criminal proceedings, that the defendant must rely upon one ground of defence, and that pleading double was never to be admitted. This strictness, having been found very inconvenient, was relaxed as far as it relates to civil actions, by 4 Anne, ch. 16, secs. 4, 5, which enables the defendant, by leave of the court, to plead as many matters as he may think fit, but which contains a proviso that nothing contained therein shall extend to any indictment or presentment of treason, felony or murder, or any other like matter, or to any action upon a penal statute. Criminal proceedings therefore remain under the same restriction which existed as to all matters at common law, and no more than one plea can be put in, to answer any indictment or criminal information." Archbold's Pleading and Evidence, p. 74, states the same rule.

Wharton, in his Criminal Law, sec. 530, says:—" Double pleading is not allowable, and if *autrefois acquit* be pleaded with not guilty, the latter will be struck off." The cases of *State* v. *Copeland*, 2 Swan, 626, *Hill* v. *The State*, 2 Yerg., 248, *Nauer* v. *Thomas*, 13 Allen, 572, and *Regina* v. *Strahan*, 7 Cox C. C., 85, are to the same effect.

But it is said that, however this may be, the court erred

in directing the accused to plead orally. The court simply decided that his pleas, as they were, could not be received, and inasmuch as he did not offer to amend by striking out one of the grounds of defence, but insisted on his right to plead as he had done, the court directed him to plead orally, guilty or not guilty. He pleaded not guilty, which virtually amounted to the striking out of the special plea in bar. We see no error in this. *Nauer* v. *Thomas*, supra.

Again, there was no merit in the special plea. It made no answer to the charge set forth in the information. The claim is that the defendant was not prosecuted for this crime within the meaning of the statute of limitations (Gen. Statutes, p. 545, sec. 1,) before the 13th day of October, 1881, when he was called upon to plead in the Superior Court to the information filed by the State's Attorney at the January term of the court, 1879; and this although the defendant had been arrested for the same offence, and brought before a justice of the peace on the 8th of October, 1878, on a proper complaint by an informing officer of the town where the offence was alleged to have been committed, and although the justice had duly bound him over to appear at the same January term of the Superior Court to answer to the charge made in the complaint. The claim is that the proceedings before the justice were no part of the then pending prosecution of the defendant; that the information filed by the State's Attorney was a new accusation, and that nothing was done under it until he was called upon to plead to it, more than three years after the crime was committed.

If the defendant had been tried in the Superior Court upon the complaint filed by the grandjuror, as he might have been, (2 Swift's Digest, 370,) it probably would be conceded that the statute of limitations had not run against the crime. But it is an erroneous assumption that the information filed by the Attorney was the commencement of a new proceeding and an abandonment of the old one; it was merely a substitution of the information for the complaint in the progress of the prosecution commenced by the grandjuror. There was no abandonment of the original

proceedings. The bond taken by the justice required the accused to appear before the Superior Court and answer to the charge contained in the complaint. The information made the same charge in the same court in the same case. Hence the bond required the accused to make answer to the information, and it would have been forfeited if he had failed to do so as much as it would have been if the case had proceeded upon the complaint. Such has been the uniform rule in such cases from time immemorial, and its correctness has never before been questioned. Judge SWIFT, in the second volume of his Digest, p. 370, says:— " So where a complaint has been made by a single grand-juror to a justice of the peace, and the person prosecuted has been bound over to the Superior or County Court, then, if the complaint should be defective, he [the State's Attorney] may file a new information, but where it is good he may proceed to trial upon it." Judge DUTTON, in his Revision of Swift's Digest, adds :—" In such cases [that is, of binding over] the practice is for the Attorney to file an information." We think, therefore, there was no merit in the defendant's plea in bar, and for this reason the ruling of the court could have done him no harm.

Again, it is said the court erred in allowing the State to prove that the accused received and concealed the property in question, knowing that it had been stolen, inasmuch as the information contained but one count, and that for theft, and inasmuch as the Attorney had first offered evidence tending to show that the defendant was a principal in the original theft.

This question depends upon the construction that should be given to the statute upon which this information is based. The statute is as follows :—" Every person who shall receive and conceal any stolen goods or articles, knowing them to be stolen, shall be proceeded against as a principal, although the person who committed the theft be not convicted thereof; and shall be prosecuted and tried before the same court, and punished in the same manner as if he had been the principal." In the case of *State* v.

*Weston*, 9 Conn., 527, the information contained but a single count, which charged both of the defendants with the crime of stealing bank bills to the amount of sixty-nine dollars. There was evidence on the trial that one of the defendants stole the property and afterwards gave a part of it to the other, who knew that it had been stolen. Thereupon the counsel for the defendants claimed that if the jury should find this to be true, the receiver could not be convicted upon the same information with the original thief. The court did not so charge, but charged the contrary. Both of the defendants were convicted, and this court held the conviction correct.

This case establishes the doctrine that a person who receives and conceals stolen goods, knowing them to have been stolen, is guilty, under the statute, of stealing the property with the principal thief. The statute is to the same effect. It provides that the receiver shall be "prosecuted" as if he were the principal, that he shall be "tried before the same court" as if he were the principal, and shall be "punished in the same manner" as if he were the principal. Surely no other reasonable construction can be given to the statute. By the statute of 5 Anne, ch. 31, and by that of 1 Geo. I., ch. 11, receivers of stolen goods, knowing them to be stolen, were made accessories to the original felony, and punished in the same manner as their principals. 4 Black. Comm., 38, 39, 132. The only difference between that statute and ours is, that ours makes receivers principals in the felony, and not accessories to it. But in both statutes the offence relates back to the original crime.

It follows, therefore, that the information is correct in charging the defendant with the commission of the original crime; and that the court committed no error in allowing evidence that the defendant received and concealed the stolen property, knowing that it had been stolen, in order to prove him guilty of the original crime, although evidence had been offered of a different character. If the prosecutor offers evidence tending to show that the accused is guilty of crime in one capacity, he is not thereby precluded from

proving him guilty in another. He may show that the accused was the principal perpetrator, and after offering his evidence connecting him directly with the crime, he may prove him guilty as an aider and abettor, or, as in this case, that he was guilty as a receiver of the stolen goods. This was done in the case of *State* v *Weston*, just referred to.

And it further follows that the court in New Haven County, within whose jurisdiction the original crime was committed, had jurisdiction of the case, for the defendant was a principal in the crime. The case of the receiver follows that of the principal perpetrator, and wherever he may be brought to justice, there may the receiver also. No doubt the court in Fairfield County had likewise jurisdiction of this case, inasmuch as the principal thief took the property into that county.

Again, it is claimed that the court erred in receiving evidence tending to show knowledge on the part of the defendant that the property in question had been stolen, by showing that he had previously received other stolen goods from the principal perpetrator in this case, knowing that they had been stolen. We see no error in this. We have nothing to do with the question of fact which the counsel for the defendant attempts to raise, whether the principal thief in this case was or was not concerned in the stealing and delivery of the stolen property to which the admitted evidence related. It is sufficient that the state claimed on the trial that he was concerned in both transactions, and that the question of fact was submitted to the jury. All that the court below had to determine was, whether guilty knowledge could properly be proved in the manner proposed; and we have no doubt that the ruling of the court was correct. Wharton, in his work on Criminal Law, vol. I, sec. 634, refers to the case of *People* v. *Rando*, 3 Parker's Crim. R., 335, approvingly as follows :—" The prisoner was indicted for receiving stolen goods, knowing them to be stolen at the time; the prosecution offered evidence of several acts of like character, with the view of showing therefrom guilty knowledge on the part of the

defendant. It was held that the evidence was admissible."
So in vol. II, sec. 1890, he says,—"To show guilty knowl-
edge, other instances of receiving may be proved; even
though they be the subject of other indictments antecedent
to the receiving in question." In *Rex* v. *Davis*, 6 Car. & P.,
177, the defendants were charged in several indictments
with receiving stolen goods; it was held that "any re-
ceiving that was before the one in the indictment which is
being tried, may be given in evidence, although itself the
subject of another indictment."

.. The cases in the state of New York, (*Coleman* v. *The
People*, 55 N. York, 81, *Copperman* v. *The People*, 56 id.,
591, and *Coleman* v. *The People*, 58 id., 555,) may seem on
a casual examination to hold the doctrine that the receiving
of stolen goods in the former instances must not only have
been from the same party from whom the goods in question
were received, but that the goods in question must have
been stolen from the same person as the others and be
similar in character to them; but a more careful examina-
tion of the cases will show that no such point was made.
In the last two cases the goods were stolen from the same
party from whom the goods in question were stolen, and
were all similar in character, and so the court states the
fact; but it is not held in either of them that this was
essential to make the evidence admissible. In the first case
cited the court remarks that "it is not competent for the
prosecution to show, for the purpose of proving the *scienter*,
that the accused has received other property from other
persons, knowing the same to have been stolen." Of
course the property must have been received from the same
person from whom the goods in question were received in
order to show guilty knowledge, but that all the property
must be stolen from the same party, or must be similar in
character, none of the cases decide. There is no reason for
such a doctrine. If the accused knows, when he receives
goods, that he receives them from a professional thief, who
has made him a receiver of the proceeds of various thefts
before, it adds no force to the evidence, that the thefts were

all from the same party, or that the stolen goods were similar in character.

The remaining questions in the case need but brief notice.

The evidence offered by the defendant to support the character of one of his witnesses for truth and integrity, who was a resident of this state, and to impeach whose general reputation in this respect no attempt had been made by the prosecution, was clearly inadmissible.

The question asked of Collins on cross-examination by the State was allowable. 1 Chitty Crim. Law, 621; 2 Stark. Ev., 116; 1 Greenl. Ev., § 456; *Harris* v. *Tippett*, 2 Campb., 638; *Southard* v. *Rexford*, 6 Cowen, 254. The witness declined to answer the question, and certainly the defendant has no cause to complain.

The pending informations against the witnesses Collins and Johnson, offered in evidence by the State to impeach their character, were ruled out by the court, and consequently could have done the defendant no harm.

We have no doubt that a horse is included within the meaning of the words "goods or articles," as used in the statute on which this information is based. Whatever property is the subject of larceny, admits of being received and concealed within the meaning of the statute. Webster defines goods to be "personal or movable estate, as horses, cattle, utensils, &c."

The charge of the court in regard to what constitutes "concealing" the property is unexceptionable. A horse may be concealed, within the meaning of the statute, by destroying the means of identifying him as well as in any other manner. The word "conceal" was not used in the statute in a technical sense. It includes all acts done which render the discovery or identification of the property more difficult.

The other questions growing out of the charge of the court have already been considered.

A new trial is not advised.

In this opinion the other judges concurred.